UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LAND O' LAKES, INC.,                              Case No. 09-CV-0693 (PJS/JSM)

        Plaintiff,

v.

EMPLOYERS MUTUAL LIABILITY
INSURANCE COMPANY OF WISCONSIN
and THE TRAVELERS INDEMNITY
COMPANY,

        Defendants.

_____          ORDER ON THE MOTION FOR
                                                  SUMMARY JUDGMENT OF
EMPLOYERS INSURANCE COMPANY                       DEFENDANT THE TRAVELERS
OF WAUSAU, f/k/a Employers Insurance of           INDEMNITY COMPANY
Wausau a Mutual Company, and THE
TRAVELERS INDEMNITY COMPANY,

        Third-Party Plaintiffs,
v.

WHITE MOUNTAINS REINSURANCE
COMPANY OF AMERICA, successor to
Mutual Service Casualty Insurance Company,
and DOE INSURER DEFENDANTS 1-10,

        Third-Party Defendants.

---

      Steven P. Zabel and Aleava R. Sayre, LEONARD, STREET AND DEINARD, for
plaintiff Land O' Lakes, Inc.

      Michael P. McNamee and Charles E. Spevacek, MEAGHER & GEER, P.L.L.P., for
defendant/third-party plaintiff The Travelers Indemnity Co.

      Plaintiff Land O' Lakes has sued two of its insurers — defendants Employers Insurance

Company of Wausau ("Wausau") and  The Travelers Indemnity Company ("Travelers") —

-1-

seeking indemnity and payment of defense costs in connection with an environmental-cleanup action brought against Land O' Lakes by the Environmental Protection Agency ("EPA"). Wausau and Travelers have brought third-party claims against White Mountain Reinsurance Company ("White Mountain"), which provided insurance coverage that might apply to the EPA action against Land O' Lakes. Travelers now moves for summary judgment, asking this Court to hold that Travelers has no duty to defend or indemnify Land O' Lakes. For the reasons that follow, the Court grants in part and denies in part Travelers' motion.

## I. BACKGROUND[1]

Land O' Lakes is a large member-owned agricultural cooperative. In 1981, Land O' Lakes agreed to acquire Midland Cooperatives, Inc. ("Midland"). Pursuant to that agreement, Land O' Lakes and Midland merged on January 1, 1982. McNamee Aff. [Docket No. 61] Ex. 28.

Midland had operated an oil refinery located in Cushing, Oklahoma from the 1940s to the 1970s, but Midland sold the refinery to a third party several years before it merged with Land O' Lakes. Obviously, then, Land O' Lakes never operated the Cushing refinery, and the Cushing refinery was not among the assets that Land O' Lakes acquired when it merged with Midland. But when Land O' Lakes acquired Midland, Land O' Lakes became responsible for Midland's liabilities. Unfortunately for Land O' Lakes, Midland's operation of the Cushing refinery may result in substantial liabilities for which Land O' Lakes may have to answer as Midland's

_____

[1]For purposes of its summary-judgment motion, Travelers agreed to treat as true certain facts that it would otherwise dispute. *See* Def. Mem. Supp. Mot. S.J. at 5 n.4 [Docket No. 59]. The facts described in this section include both undisputed facts and disputed facts that Travelers has agreed, for the time being, to treat as true.

successor.  The EPA has determined that the site of the Cushing refinery is contaminated and that much of the contamination resulted from Midland's operation of the refinery.  *See* McNamee Aff. Ex. 25 at 6-7, LOL0137442-43.  The EPA is now attempting to recover cleanup costs from Land O' Lakes (as Midland's successor) under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-75.

In this action, Land O' Lakes seeks insurance coverage for the EPA's claims from Wausau and Travelers — and, as noted, Wausau and Travelers contend that White Mountain may be liable to Land O' Lakes instead of or in addition to them.  There is a significant difference between, on the one hand, the relevant policies written by Wausau and White Mountain, and, on the other hand, the relevant policies written by Travelers.  Whereas Wausau and White Mountain insured *Midland* while Midland was operating the Cushing refinery, Travelers insured only *Land O' Lakes* while Land O' Lakes had nothing to do with the refinery. Specifically, Travelers provided coverage to Land O' Lakes under various comprehensive general liability ("CGL") policies from 1964 through 1981 — the years preceding Land O' Lakes' acquisition of Midland on January 1, 1982.  The question now before the Court is whether these Travelers policies may afford coverage to Land O' Lakes for the costs of cleaning up the site of the Cushing refinery.

## II.  DISCUSSION

### A.  Standard of Review and Applicable Law

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A dispute

over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The parties seem to agree, and the Court has no reason to doubt, that Minnesota law governs interpretation of the Travelers policies. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) ("State law governs the interpretation of insurance policies."). Under Minnesota law, the interpretation and construction of an insurance policy is a matter of law for the court. *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997); *Caledonia Cmty. Hosp. v. St. Paul Fire & Marine Ins. Co.*, 239 N.W.2d 768, 770 (Minn. 1976).

Insurance policies are interpreted according to the same principles that govern the interpretation of contracts generally. *Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 518 (Minn. 2001); *Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000). Thus insurance policies must be interpreted to give effect to the parties' intent as expressed in the policy language. *Nathe Bros.*, 615 N.W.2d at 344; *Minn. Mining & Mfg. Co. v. The Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn. 1990).

Further, insurance policies must be construed as a whole. *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994). All terms of an insurance policy must be given effect if possible. *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960); *Steele v. Great W. Cas. Co.*, 540 N.W.2d 886, 888

(Minn. Ct. App. 1995). As the Minnesota Supreme Court instructed in *Cement, Sand & Gravel Co. v. Agricultural Insurance Co. of Watertown, New York*:

> The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole.

30 N.W.2d 341, 345 (Minn. 1947); *see also Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979) (quoting *Cement, Sand & Gravel Co.*).

If the language of an insurance policy is clear, that language must be given its "usual and accepted meaning." *Widness*, 635 N.W.2d at 518. Moreover, the meaning of policy language is assessed against an objective standard: The court asks what a "reasonable person" in the insured's position would have understood by the language. *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977); *Soo Line R.R. Co. v. Brown's Crew Car of Wyo.*, 694 N.W.2d 109, 113 (Minn. Ct. App. 2005).

Whether an insurance policy is ambiguous is a question of law for the court. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn. 1979); *Brault v. Acceptance Indem. Ins. Co.*, 538 N.W.2d 144, 147 (Minn. Ct. App. 1995). Policy language is ambiguous if it can reasonably be interpreted in more than one way. *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227 (Minn. 1996). Ambiguous policy language will be construed against the insurer who drafted the policy. *Widness*, 635 N.W.2d at 518. Put another way, all reasonable doubts about policy interpretation will be resolved in favor of the policy holder. *Brault*, 538 N.W.2d at 147.

Travelers focuses its argument on policy language defining the "named insured" and minimizes the importance of the policies' coverage-granting provisions. Land O' Lakes does the reverse, emphasizing the coverage-granting provisions and asking the Court to disregard as irrelevant the named-insured provisions. The Court summarizes below the relevant policy language.

### 1. Named Insured

The policies at issue contain four different types of named-insured provisions. The first and simplest provision is found in the oldest policy, which applied during 1964. That policy defines the named insured as three specific corporate entities: Land O' Lakes Creameries, Inc.; Land O' Lakes Dairy Co.; and Northwest Dairy Products Company, Inc.[3]

A second type of provision, found in policies that covered the six years from 1965 through 1970, includes expressly future-regarding language. Specifically, this second provision defines the named insured as:

---

[2]The policies at issue all have policy periods that begin on January 1 of one year and expire on January 1 of the next year. For instance, one policy's term begins on January 1, 1971 and ends on January 1, 1974, and it therefore applied during three calendar years: 1971, 1972, and 1973. See McNamee Aff. Ex. 4 at TRV000279. Confusingly, the parties refer to this policy as the "1971-1974 policy." The Court, in describing a policy, names it according to the calendar years to which the policy applies. Thus, for instance, what the parties call the "1971-1974 policy" the Court calls the "1971 to 1973 policy."

The policy language provided in the text sometimes represents a close paraphrase, rather than an exact quotation, of the underlying policies. In paraphrasing the policy language, the Court has disregarded trivial differences among similar provisions that appear in different policies.

[3]McNamee Aff. Ex. 1 at TRV000008.

> Land O' Lakes Creameries and all its subsidiaries; any associated
> or affiliated companies controlled or owned by Land O' Lakes
> Creameries; and any such company now and hereafter constituted.[4]

A third type of provision, found in policies that covered the eleven years from 1971

through 1981, includes language that is less strongly future-regarding than the second provision.

Under the third provision, the named insured is:

> Land O' Lakes, Inc., including any subsidiary company (including
> subsidiaries thereof) and any other associated or affiliated company
> coming under Land O' Lakes' control of which it assumes active
> management.[5]

Finally, a fourth type of provision, found in a different set of policies that provided

additional coverage for the eight years from 1974 through 1981 — the so-called "NSL" policies

— includes an express temporal limitation on the types of corporate acquisitions that could result

in coverage for an acquired entity. Under the fourth provision, the named insured is:

> Land O' Lakes, Inc. and any other company which is acquired or
> formed by the named insured during the policy period and over
> which the named insured maintains ownership or financial
> control.[6]

---

[4] McNamee Aff. Ex. 2 at TRV000099, TRV000140, TRV000150 (1965, 1966, and 1967); McNamee Aff. Ex. 3 at TRV000192, TRV000269 (1968, 1969, and 1970).

[5] McNamee Aff. Ex. 4 at TRV000311 (1971, 1972, and 1973) (superseding the named-insured provision at TRV000292); McNamee Aff. Ex. 5 at TRV000349 (1974); McNamee Aff. Ex. 7 at TRV000420 (1975); McNamee Aff. Ex. 9 at TRV000510 (1976, 1977, and 1978); McNamee Aff. Ex. 11 at TRV000676 (1979); McNamee Aff. Ex. 13 at LOL-INS 0002505 (1980); McNamee Aff. Ex. 15 at TRV000821 (1981).

[6] McNamee Aff. Ex. 6 at TRV000378 (1974); McNamee Aff. Ex. 8 at TRV000467 (1975); McNamee Aff. Ex. 10 at TRV000584 (1976, 1977, and 1978); McNamee Aff. Ex. 12 at TRV000719 (1979); McNamee Aff. Ex. 14 at TRV000761 (1980); McNamee Aff. Ex. 16 at TRV000859 (1981).

## 2. Coverage-Granting Provisions

The policies' coverage-granting provisions (unlike the named-insured provisions) are essentially the same in all important respects. Under all of the policies, the insuring clause includes a promise by Travelers to pay amounts that "the insured shall become legally obligated to pay as damages" for a covered accident or occurrence.[7]

Every policy defines a covered accident or occurrence with reference to the policy period. Specifically, the policies in effect from 1964 through 1967 apply to "accidents which occur during the policy period."[8] The policies in effect from 1968 through 1973 cover "an accident . . . which results, during the policy period," in unexpected property damage or bodily injury.[9] And the policies in effect from 1974 through 1981 cover, with minor variations, property damage that "occurs during the policy period" and the loss of use of undamaged property if the loss "is caused by an occurrence during the policy period."[10]

---

[7]McNamee Aff. Ex. 1 at TRV000003 (1964); McNamee Aff. Ex. 2 at TRV000051 (1965, 1966, and 1967); McNamee Aff. Ex. 3 at TRV000176 (1968, 1969, and 1970); McNamee Aff. Ex. 4 at TRV000284 (1971, 1972, and 1973); McNamee Aff. Ex. 5 at TRV000334 (1974); McNamee Aff. Ex. 6 at TRV000369 (1974); McNamee Aff. Ex. 7 at TRV000405 (1975); McNamee Aff. Ex. 8 at TRV000458 (1975); McNamee Aff. Ex. 9 at TRV000496 (1976, 1977, and 1978); McNamee Aff. Ex. 10 at TRV000574 (1976, 1977, and 1978); McNamee Aff. Ex. 11 at TRV000651 (1979); McNamee Aff. Ex. 12 at TRV000709 (1979); McNamee Aff. Ex. 13 at LOL-INS 0002496 (1980); McNamee Aff. Ex. 14 at TRV000753 (1980); McNamee Aff. Ex. 15 at TRV000793 (1981); McNamee Aff. Ex. 16 at TRV000851 (1981).

[8]McNamee Aff. Ex. 1 at TRV000003 (1964); McNamee Aff. Ex. 2 at TRV000051 (1965, 1966, and 1967).

[9]McNamee Aff. Ex. 3 at TRV000173 (1968, 1969, and 1970); McNamee Aff. Ex. 4 at TRV000281 (1971, 1972, and 1973).

[10]McNamee Aff. Ex. 5 at TRV000331 (1974); McNamee Aff. Ex. 6 at TRV000379 (1974); McNamee Aff. Ex. 7 at TRV000402 (1975); McNamee Aff. Ex. 8 at TRV000468 (1975); McNamee Aff. Ex. 9 at TRV000493 (1976, 1977, and 1978); McNamee Aff. Ex. 10 at

*C. Coverage for Liabilities Arising from After-Acquired Companies or Property*

Land O' Lakes argues that it is entitled under the plain language of the Travelers policies to coverage for the liabilities that it now faces as Midland's successor. And there is no dispute, for present purposes, that the cleanup costs sought by the EPA from Land O' Lakes qualify as amounts that Land O' Lakes is "legally obligated to pay as damages" for an accident or occurrence — environmental contamination — that took place during the relevant policy periods. According to Land O' Lakes, these facts suffice to entitle Land O' Lakes to coverage under the Travelers policies. Pl. Mem. Opp. Def. Travelers Mot. SJ at 2 ("Pl. SJ Opp.") [Docket No. 63].

The main problem with Land O' Lakes' argument is that it ignores the named-insured provisions of the policies. The identity of the insured party as set forth in a named-insured provision is an essential element of any insurance policy. Before a Court can discern the extent of the coverage provided by a policy, it must examine *all* of the terms of the policy, including not only the affirmative grants of coverage, but also the provisions that identify who is insured and for what period of time. The Court must also examine the factual context surrounding the issuance of the policy insofar as that context illuminates the objective meaning of the policy's terms.

As described above, the Travelers policies contain four different named-insured provisions. The Court will therefore analyze separately, and (for ease of exposition) in the following order: (1) the policy covering 1964; (2) the NSL policies providing additional

---

TRV000585 (1976, 1977, and 1978); McNamee Aff. Ex. 11 at TRV000648 (1979); McNamee Aff. Ex. 12 at TRV000720 (1979); McNamee Aff. Ex. 14 at TRV000762 (1980); McNamee Aff. Ex. 15 at TRV000790 (1981); McNamee Aff. Ex. 16 at TRV000860 (1981).

coverage for 1974 through 1981; (3) the policies covering 1965 through 1970; and (4) the policies covering 1971 through 1981.

### 1. The Policy Providing Coverage for 1964

When a court attempts to identify who is insured under a policy, it must consider not only the language of the named-insured provision, but also what a reasonable person would have understood that language to mean in light of the surrounding factual context. As a general matter, when a company purchases a one-year, occurrence-based CGL policy from an insurer, both the company and the insurer understand that if that year passes and the company *as it existed while the policy was in effect* does nothing to incur legal liability, the insurer will not be obligated to defend or indemnify the company under the policy. In other words, when a one-year CGL occurrence policy identifies the named insured simply as "Acme, Inc.," the parties generally intend and understand "Acme, Inc." to mean "Acme, Inc. as it exists during the term of this policy" — not "Acme, Inc. as it may exist any time in the distant future." And if "Acme, Inc." does nothing during the policy term that results in liability, then the insurer will not be liable under the policy, even if some *other* company — a company that is *not* insured under the policy — commits wrongful acts during the existence of the policy.

The Travelers policy covering 1964 defines the named insured as Land O' Lakes Creameries, Inc.; Land O' Lakes Dairy Co.; and Northwest Dairy Products Company, Inc.[11] Travelers could not possibly have intended, nor reasonably have been understood, to have insured not only these three companies as they existed in 1964, but also any and all *other* companies that one of these three companies might acquire years after the policy expired. As the

---

[11]McNamee Aff. Ex. 1 at TRV000008.

California Court of Appeals said in *FMC Corporation v. Plaisted & Cos.*, liability under a CGL policy must typically be based on a "contemporaneous factual predicate" that existed during the term of the policy. 72 Cal. Rptr. 2d 467, 480 (Cal. Ct. App. 1998); *see also A.C. Label Co. v. Transam. Ins. Co.*, 56 Cal. Rptr. 2d 207, 209 (Cal. Ct. App. 1996) ("Coverage questions arising under a CGL occurrence policy must be resolved based on the facts in existence *at the time that the damage occurred.*"). The Court agrees with *FMC Corporation* that ordinarily "[a] general liability insurer . . . cannot be required to be clairvoyant as to the infinite possible future permutations of facts, fundamental to the very existence of coverage but not in existence during the policy period, once the policy period has expired." 72 Cal. Rptr. 2d at 480; *see also Tosco Corp. v. Gen. Ins. Co. of Am.*, 102 Cal. Rptr. 2d 657, 661 (Cal. Ct. App. 2000) (quoting *FMC Corp.*).

The contrary rule would not only make it impossible for an insurer to assess the risks that it is insuring (and to price its policy accordingly), but would also allow insureds to unilaterally impose liabilities on insurers and thereby create a significant moral-hazard problem.[12] Suppose, as Land O' Lakes contends, that the policy that it purchased from Travelers to cover 1964 now

---

[12]According to an insurance-law treatise:

> Moral hazard describes a behavioral reaction when a party is protected from the consequences of a risk. The protected party — in this case, someone covered by insurance for a particular loss — may behave differently than he would have behaved if he were fully exposed to the risk. Specifically, he may have a tendency to act less carefully because someone else will bear the consequences of any resulting loss. The less careful behavior makes it more likely that a loss will occur.

1 Jeffrey E. Thomas, *New Appleman on Insurance Law Library Edition* §1.01[4][b] (LexisNexis 2010).

provides coverage to Land O' Lakes for environmental damage caused in 1964 by an entirely

different company — a company with which Land O' Lakes had no relationship in 1964, but

acquired almost 20 years later.  Or suppose (to change the facts just slightly) that a policy that

Land O' Lakes purchased from Travelers to cover 1964 now provides coverage to Land O' Lakes

for a piece of property that was contaminated by an unrelated company in 1964 and acquired by

Land O' Lakes in 1982.  If CGL policies generally provided such coverage, a market would

develop in which an overinsured company could "cash in" its unused insurance coverage by

acquiring underinsured companies or underinsured property.[13]

Consider this hypothetical example:  Suppose Corner Grocery, Inc. purchased $2 million

in CGL coverage in 1970 and never made a claim under the policy.  Meanwhile, across the street,

Big Gas Station, Inc. dumped used motor oil on its premises in 1970 and caused $3 million in

damage.  Thirty years later, the EPA sues Big Gas Station for the $3 million cleanup.  The

owners of Corner Grocery have retired, and Corner Grocery exists only as a shell corporation.

---

[13]*Cf. A.C. Label Co.*, 56 Cal. Rptr. 2d at 210-11 ("If coverage could be created by after-the-fact transfer of liability to an insured, an insured could contrive to make an insurer responsible for the liability of a *third party* by simply acquiring that liability long after damage attributable to the third party had already occurred simply because of the happenstance that the *insured*, as opposed to the third party, had been covered by a CGL policy at the time of the damage.  Such an unlimited extension of coverage would permit a party that was responsible for damage to force the insurer of *another* to 'share' that responsibility by simply transferring the party's accrued liability to an insured.  Insurance companies could then be drawn into litigation notwithstanding the fact that they had not insured any of the parties that were liable for the damage when it occurred.  The insurer's ability to assess risks would be seriously undermined."); *Md. Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ. 2613, 1994 U.S. Dist. LEXIS 15322, at *15, 1994 WL 592267, at *5 (S.D.N.Y. Oct. 26, 1994) (rejecting insured's argument for coverage of liability arising from a post-policy-period acquisition, stating:  "Under [the insured's] theory, corporations could acquire unrelated companies with severe liability and rely upon insurance policies that had expired years earlier.  As a result, an insurer would be unable to determine a pricing scheme that appropriately reflects the type of coverage sought by the insured.").

Big Gas Station (like Corner Grocery) had only $2 million in CGL coverage in 1970, so Big Gas Station is facing the prospect of spending $1 million of its own funds to clean up its property. Big Gas Station knows that Corner Grocery has $2 million in untapped coverage from 1970. As Land O' Lakes would have it, Big Gas Station could pay Corner Grocery $500,000 to agree to a transaction — for example, the sale of the contaminated land[14] or a merger between Big Gas Station and Corner Grocery — that would shift $1 million of liability from Big Gas Station to Corner Grocery's insurer. Corner Grocery would end up $500,000 ahead (it "sold" $1 million of unused insurance coverage for $500,000), Big Gas Station would end up $500,000 ahead (it paid $500,000 to dump $1 million of liability on Corner Grocery's insurer), and Corner Grocery's insurer — which, back in 1970, thought that it was insuring a mom-and-pop grocery store, and priced its policy accordingly — would be forced to pay $1 million to clean up property that was contaminated by a large gas station that it never agreed to insure.

As this stylized example illustrates, insurers would have an obvious moral-hazard problem if an insured could retroactively and unilaterally impose liability on an insurer long after a policy had expired. Moral hazard is a well-known problem in insurance markets, and insurers generally seek to minimize moral hazard to the extent that they can. *See* Kenneth S. Abraham, *Environmental Liability and the Limits of Insurance*, 88 Colum. L. Rev. 942, 949-54 (1988) (discussing insurers' methods of minimizing moral hazard). Indeed, the Minnesota Supreme

---

[14]Under CERCLA, current and former property owners may, in some circumstances, be held jointly and severally liable for indivisible harm at a contaminated property. *See* 42 U.S.C. § 9607(a) (identifying classes of potentially responsible parties); *id.* § 9607(r) (establishing when a "bona fide prospective purchaser" is not liable for harm caused by a property's previous owners); *see also, e.g., United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268-69 (3d Cir. 1992) (discussing joint and several liability under CERCLA).

Court recognized moral hazard as an "elementary insurance principle[]" (though it did not use the term "moral hazard") in *Knutson Construction Co. v. St. Paul Fire & Marine Insurance Co.* when the court said that "insurers' assumptions of risk are usually limited to those beyond the 'effective control' of the insured." 396 N.W.2d 229, 233-34 (Minn. 1986); *see also Charter Oak Fire Ins. Co. v. Color Converting Indus. Co.*, 45 F.3d 1170, 1174 (7th Cir. 1995) (quoting *Knutson* as an example of a court's recognition of the moral-hazard problem). The avoidance of moral hazard by insurers is thus part of the general context of the insurance market, and it is within that context that insurance policies must be construed.

This is not to say that something that occurs after the policy expires can never retroactively saddle an insurer with liability that did not exist during the policy period. Environmental-contamination cases under CERCLA often involve precisely such retroactive liabilities: Insurers have become liable for pre-CERCLA environmental damage under pre-CERCLA insurance policies. *See, e.g., FMC Corp.*, 72 Cal. Rptr. 2d at 479-80. But even in CERCLA cases, an insurer's retroactive liability results from actions that its *insured* — and not someone else — committed during the policy period. *See id.* Further, because the liability is created by a change in the law that postdates the policy period — rather than by an action of the *insured* that postdates the policy period — the retroactive imposition of liability does not pose a moral-hazard problem. Such retroactive statutory liability is therefore consistent with elementary insurance principles.

To return to the facts of this case, the Court is confident that when Land O' Lakes purchased the 1964 policy covering three named entities — Land O' Lakes Creameries, Inc.,

Land O' Lakes Dairy Co., and Northwest Dairy Products Company, Inc.[15] — neither Land O' Lakes nor Travelers had any subjective belief that Land O' Lakes was also purchasing coverage of Midland or any other company that Land O' Lakes might someday acquire. More importantly, the Court finds that the objective intent of Land O' Lakes and Travelers, as expressed in the policy, was to provide coverage during 1964 to the three named entities as they existed during the policy term. Any other interpretation would be manifestly unreasonable given the policy as a whole (which includes both a named-insured provision and a policy period) and given the surrounding factual context (namely, the nature of the insurance market, and the fact that Land O' Lakes was purchasing insurance coverage on its behalf while other corporations such as Midland were purchasing insurance coverage on their own behalf).[16]

This is not to say that an insured such as Land O' Lakes can *never* purchase an insurance policy that provides coverage for damages arising from the post-policy-period acquisition of a

_____

[15]McNamee Aff. Ex. 1 at TRV000008.

[16]The Court therefore respectfully disagrees with those few courts that have looked only at policy language defining a covered occurrence, rather than also considering the named-insured and policy-period provisions, to find coverage under a CGL policy for liabilities arising from companies or property acquired by the insured after the policy expired. *See Cont'l Cas. Co. v. Ameripride Servs., Inc.*, No. CT 04-002506, slip op.at 15 (Minn. Dist. Ct. Hennepin Cnty. Dec. 17, 2004), filed as McNamee Aff. Ex. 32; *KF Dairies, Inc. v. Fireman's Fund Ins. Co. (In re KF Dairies)*, 224 F.3d 922, 927-28 (9th Cir. 2000) ("The policy defines an 'occurrence' as 'an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' This language is unambiguous. Moreover, there is no language in the policy stating that the insured's liability, as opposed to the damage that serves as the basis for that liability, must arise within the policy period.").

It is worth noting that *KF Dairies*, a federal-court opinion applying California law to find coverage for damages associated with property that was acquired after a policy period, was expressly rejected by the California Court of Appeals. *Tosco Corp. v. Gen. Ins. Co. of Am.*, 102 Cal. Rptr. 2d 657, 662 (Cal. Ct. App. 2000).

company or a piece of property. Insurers and their customers "are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into." *Am. Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn. 1983); *see also Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 882 (Minn. 2002) (quoting *Am. Family*). The Court does not see any statutory or public-policy reason why an insurer could not agree to cover liabilities arising from after-acquired companies or property. As discussed below, Land O' Lakes purchased *other* policies from Travelers that explicitly extended coverage to liabilities incurred in connection with certain after-acquired companies. In such cases, the intent of the parties as expressed in the language of the policy is clear and should be enforced.

But the Court cannot find coverage for an after-acquired entity in a typical CGL policy — like the 1964 Travelers policy — that merely extends coverage to one or more named companies existing at the time that the policy issues. To be clear, the Court's conclusion is not based on public-policy considerations. *Cf. Gabrelcik v. Nat'l Indem. Co.*, 131 N.W.2d 534, 536 (Minn. 1964) (discussing "considerations of public policy" in interpreting insurance policy). Rather, the Court's conclusion is based on the context surrounding the purchase of a CGL policy and the inclusion in a CGL policy of provisions defining both the policy period and the named insured. Given that context and those provisions — and totally apart from questions of public policy — it is simply not reasonable to interpret an ordinary CGL policy as covering liability that the named insured voluntarily assumes when it purchases a corporation or piece of property decades after the CGL policy expires. For these reasons, the Court holds that Land O' Lakes is not covered under the 1964 Travelers policy for acts committed by Midland in 1964 and for which Land O'

Lakes may be liable only because it purchased Midland and voluntarily assumed its liabilities in 1982.

2. The NSL Policies Providing Additional Coverage for 1974 through 1981

The analysis is much simpler for the Travelers NSL policies covering 1974 through 1981. In those policies, the named insured is "Land O' Lakes, Inc. and any other company which is acquired or formed by the named insured *during the policy period* and over which the named insured maintains ownership or financial control."[17]  Through this provision, Land O' Lakes and Travelers expressed their understanding that *during* the policy term, Travelers' coverage duties could be expanded beyond Land O' Lakes to entities that Land O' Lakes acquired.  In expressing this understanding, Land O' Lakes and Travelers implicitly, yet unmistakably, agreed that Travelers would *not* provide coverage to entities (such as Midland) that Land O' Lakes acquired *after* the policy term.  *See Maher v. All Nation Ins. Co.*, 340 N.W.2d 675, 680 (Minn. Ct. App. 1983) ("[T]he expression of specific things in a contract implies the exclusion of all not expressed.").

Land O' Lakes asks the Court to disregard the "during the policy period" language found in the named-insured provision of the 1974 through 1981 NSL policies.  According to Land O' Lakes, this language is irrelevant because, as a formal matter, the entity seeking coverage in this case is not Midland, but Land O' Lakes.  *See* Pl. SJ Opp. at 16 ("[E]ven those Policies with the 'during the policy period' words in the 'named insured' definitions do not limit the coverage

---

[17]McNamee Aff. Ex. 6 at TRV000378 (1974); McNamee Aff. Ex. 8 at TRV000467 (1975); McNamee Aff. Ex. 10 at TRV000584 (1976, 1977, and 1978); McNamee Aff. Ex. 12 at TRV000719 (1979); McNamee Aff. Ex. 14 at TRV000761 (1980); McNamee Aff. Ex. 16 at TRV000859 (1981).

granted to Land O'Lakes.  The question is not whether Midland is a 'named insured,' but whether Land O'Lakes (who is, indisputably, the 'named insured') is entitled to receive the benefits of the Policies' coverage promises.").

The Court will not disregard the unmistakable import of the words "during the policy period" in the named-insured provision in the 1974 to 1981 NSL policies.  If Land O' Lakes had not absorbed Midland after acquiring it — if Land O' Lakes had instead allowed Midland to remain a distinct corporate entity and operated it as a wholly owned subsidiary — this named-insured provision would, by its terms, relieve Travelers from any obligation to provide the coverage that Land O' Lakes now seeks.  The Court finds that the absorption of Midland by Land O' Lakes does not change the effect of this named-insured provision.  By using the phrase "during the policy period," Travelers and Land O' Lakes agreed under these policies that Travelers' duties with respect to corporations acquired by Land O' Lakes would extend *only* to the liabilities of corporations acquired "during the policy period."  Thus, the 1974 to 1981 NSL policies provide no coverage for liabilities of Midland that Land O' Lakes assumed when it acquired the company in 1982.

### 3.  The Policies Providing Coverage for 1965 through 1970

The named-insured provisions in the policies covering 1965 through 1970, unlike the named-insured provisions in the NSL policies providing additional coverage for 1974 through 1981, contain future-regarding language that includes no temporal limitation.  The named insured in those policies includes Land O' Lakes plus any subsidiary company "*now and hereafter*

constituted."[18]  On its face, then, the 1965 to 1970 policies appear to extend coverage not only to Land O' Lakes as it was constituted during the policy periods, but also as it may be constituted at any time in the future.

Travelers contends that because each of the policies including this named-insured provision also has a temporally limited policy period, the Court should, in effect, read the words "now and hereafter" in this named-insured provision to mean "now and hereafter *until the end of the policy period*."  *See* Def. Mem. Supp. Mot. S.J. at 15-17 [Docket No. 59].  And many courts have construed similar provisions in just this manner.[19]

---

[18]McNamee Aff. Ex. 2 at TRV000099, TRV000140, TRV000150 (1965, 1966, and 1967); McNamee Aff. Ex. 3 at TRV000192, TRV000269 (1968, 1969, and 1970).

[19]*See Bristol-Myers Squibb Co. v. Highlands Ins. Co.*, No. 09-96-238 CV, 1997 Tex. App. LEXIS 5725, 1997 WL 674765 (Tex. Ct. App. Oct. 30, 1997); *Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co.*, 52 Cal. Rptr. 2d 690, 725 (Cal. Ct. App. 1996) ("We do not doubt that the phrase 'or hereafter constituted' within the named insured definition would extend coverage to a company acquired after the policy period began.  But the word 'hereafter' cannot reasonably be read as referring to any time in the indefinite future." (citation omitted)); *Cooper Cos. v. Transcont'l Ins. Co.*, 37 Cal. Rptr. 2d 508, 516 (Cal. Ct. App. 1995) ("While we recognize that elsewhere in the policies the parties explicitly limited [the insurer's] obligations to products manufactured 'by entities or subsidiaries acquired during the policy period,' we do not believe that any reasonable insured would interpret the dissimilar 'hereafter acquired' language to provide coverage in perpetuity.  Rather, in the absence of an explicit temporal limitation, we find that a reasonable insured would conclude that the language is limited by the policy period."); *Total Waste Mgmt. Corp. v. Commercial Union Ins. Co.*, 857 F. Supp. 140, 145-50 (D.N.H. 1994); *Md. Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ. 2613, 1994 U.S. Dist. LEXIS 15322, at *13-16, 1994 WL 592267, at *4-5 (S.D.N.Y. Oct. 26, 1994); *UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.*, 647 A.2d 182, 188 (N.J. Super. Ct. Law. Div. 1994) ("Although the phrase 'hereafter constituted' is somewhat ambiguous, I do not see how plaintiff could reasonably have expected that all of the business entities it acquired after the policy expired could be covered by that policy.  A fairer and more reasonable interpretation of the term 'hereafter' would be that the insurer will provide coverage for acquisitions after the policy commencement date and during the policy period.").

But, as Land O' Lakes points out, Travelers demonstrated in the 1974 through 1981 NSL policies that it knew how to write a named-insured provision that was limited to entities acquired during the policy period. *See* Pl. SJ Opp. at 15-16. Travelers did not do so when it used the unqualified phrase "now and hereafter" in the 1965 through 1970 policies, despite the obvious risk that "now and hereafter" would be construed to mean "now and at any time in the future."

The Court agrees with Land O' Lakes that, under Minnesota law, the phrase "now and hereafter" in the 1965 through 1970 policies means what it says. *See Widness*, 635 N.W.2d at 518 (clear policy language is given its "usual and accepted meaning"). When Travelers agreed to insure Land O' Lakes and any companies acquired "hereafter" — that is, after the date of the policy — Travelers agreed, unambiguously, to insure Land O' Lakes and any corporate entity it acquired at any time in the future. The Court therefore agrees with *National Union Fire Insurance Co. of Pittsburgh v. Liberty Mutual Insurance Co.*, which held that the "plain meaning" of a named-insured provision covering entities "hereafter . . . constituted" provided for coverage of liabilities arising from a post-policy-period corporate merger. No. C-89-3973-DLJ, 1991 U.S. Dist. LEXIS 11350, at *13, 1991 WL 527675, at *5 (N.D. Cal. Feb. 25, 1991).[20]

---

[20]*National Union* was subsequently vacated by stipulation of the parties in connection with a settlement. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Liberty Mut. Ins. Co.,* No. C-89-3973-DLJ, 1992 U.S. Dist. LEXIS 22866, 1992 WL 12013945 (N.D. Cal. Dec. 7, 1992). For two reasons, the opinion's vacatur does not affect the Court's estimation of its soundness. First, the decision was only persuasive, not precedential, and its vacatur pursuant to a stipulation of the parties does nothing to diminish its persuasiveness. Second, the Court does not believe that federal courts should be in the business of allowing private parties to settle away unfavorable precedent. Federal courts work for the public, and their opinions belong to the public, not to the parties. If there is no substantive reason for a court to reconsider an opinion, then the public — including judges — should be able to consider and rely on that opinion for whatever it is worth.

Further, even if the Court found that "hereafter" were ambiguous and could mean either "hereafter" or "hereafter during the policy period," the Court would construe this ambiguity against Travelers. *See Widness*, 635 N.W.2d at 518. The word "hereafter" is sufficiently forward-looking that it is reasonable to construe it in favor of providing coverage of entities acquired by the insured in the indefinite future. Land O' Lakes is therefore entitled to seek coverage from Travelers under the policies covering 1965 through 1970 for damages associated with the Cushing refinery site.

4. The Policies Providing Coverage for 1971 through 1981

The only remaining question is how to interpret the 1971 through 1981 policies. The named-insured provision in those policies envisions that Land O' Lakes may acquire additional companies, but the provision includes neither a strongly forward-looking word such as "hereafter" nor an express limitation tied to the policy period. Instead, the named-insured provision defines the named insured as "Land O' Lakes, Inc., including any subsidiary company (including subsidiaries thereof) and any other associated or affiliated company coming under Land O' Lakes' control of which it assumes active management."[21]

If Land O' Lakes is correct, the phrase "coming under Land O' Lakes' control" means, in effect, "*ever* coming under Land O' Lakes' control." And if Travelers is correct, the phrase "coming under Land O' Lakes' control" means "coming under Land O' Lakes' control *during the policy period*."

_____

[21]McNamee Aff. Ex. 4 at TRV000311 (1971, 1972, and 1973) (superseding the named-insured provision at TRV000292); McNamee Aff. Ex. 5 at TRV000349 (1974); McNamee Aff. Ex. 7 at TRV000420 (1975); McNamee Aff. Ex. 9 at TRV000510 (1976, 1977, and 1978); McNamee Aff. Ex. 11 at TRV000676 (1979); McNamee Aff. Ex. 13 at LOL-INS 0002505 (1980); McNamee Aff. Ex. 15 at TRV000821 (1981).

If both interpretations were plausible, the Court would find that this named-insured provision is ambiguous and would construe the ambiguity against Travelers. But given the general background principle that liability under an occurrence-based CGL policy must be based on facts as they existed during the policy term, the Court rejects as unreasonable Land O' Lakes' proposed interpretation of the named-insured provision in the 1971 through 1981 policies. Land O' Lakes could not have reasonably believed that "any . . . company coming under" its control means any company that Land O' Lakes might ever acquire until the end of time, and the named-insured provision containing this phrase is therefore unambiguous and does not provide coverage for the liabilities of after-acquired entities. *See Am. Commerce Ins. Brokers, Inc.*, 551 N.W.2d at 227 ("The language of an insurance policy will be held ambiguous *only if* it is reasonably subject to more than one interpretation." (emphasis added)). Travelers therefore has no duty to defend or indemnify Land O' Lakes with respect to the Cushing refinery site under the 1971 to 1981 policies.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion of defendant The Travelers Indemnity Company for summary judgment [Docket No. 57] is GRANTED IN PART and DENIED IN PART as follows:

1.      The Court DECLARES that Travelers is not obligated to defend or indemnify plaintiff Land O' Lakes in connection with claims associated with the Cushing refinery site under the Travelers policy providing coverage for 1964, the Travelers policies providing coverage for 1971 through 1981, or the Travelers NSL policies providing additional coverage for 1974 through 1981.

2.     The Court DECLARES that Travelers may be obligated to defend and indemnify

plaintiff Land O' Lakes in connection with claims associated with the Cushing

refinery site under the Travelers policies providing coverage for 1965 through

1970.

Dated:  November 24, 2010                         s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                  United States District Judge